## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.              Case No. 12-CR-262

**JAMES SCALZO**
   **Defendant.**

## ORDER

On July 18, 2013, I sentenced defendant James Scalzo to 35 months in prison on his guilty pleas to bank fraud and money laundering. I deferred restitution for 90 days under 18 U.S.C. § 3664(d)(5). The government subsequently filed a memorandum asking that I set restitution in the amount of $679,737.23. Defendant has not responded.

While employed at Fox River State Bank ("FRSB") and Consumer's Cooperative Credit Union ("CCCU"), defendant originated a series of loans for individuals who were either unaware that the loans had been made in their names or who were unqualified to receive loans under the banks' lending standards. Defendant used portions of the funds for his own benefit and later originated additional loans to generate funds to conceal his fraud. I set forth the facts of the case in detail in the written statement of reasons accompanying the judgment. In this order, I focus on the loans pertinent to the restitution determination, which are set forth in a chart on page two of the information. (R. 1 at 2.)

On or about April 7, 2008, defendant started working as vice president of business banking at FRSB. (PSR ¶ 105). On April 25, 2008, defendant arranged an $85,000 loan in the name of N.N. at FRSB by forging N.N.'s signature. Defendant used the proceeds to pay off

a previous loan N.N. had at the Bank of Kenosha (where defendant worked from April 8, 2002 to April 4, 2008) and for other purposes. (PSR ¶¶ 17-19, 106.) On June 24, 2008, defendant arranged a $100,000 line of credit for S.N. at FRSB. S.N. was unqualified for the loan, and defendant used some of the proceeds for his own benefit. When the loan came due, defendant arranged for a payoff by obtaining a loan in his mother's name at a different bank. (PSR ¶¶ 20-23, 30.) On June 25, 2008, defendant arranged for a $230,000 line of credit at FRSB in the name of P.D., a bank client who was not qualified under the bank's lending standards, diverting some of the funds for his own purposes. (PSR ¶ 25.) On July 25, 2008 and October 13, 2008, defendant arranged loans in the amount of $125,000 and $158,000 in the name of C.P., a bank client who was also unqualified, using some of the proceeds for his own purposes. (PSR ¶ 26-27.) On August 1, 2008, defendant arranged for an additional loan in the amount of $145,000 in N.N.'s name, again without N.N.'s knowledge, at FRSB, using the proceeds to pay off the previous loan in N.N.'s name and for other purposes. (PSR ¶ 24.)

     Defendant left FRSB in October 2008. (PSR ¶ 105.) In April 2009, FRSB began investigating the above loans, demanding that the borrowers shore up their financial information and/or provide collateral. (PSR ¶ 28.) Around that time, defendant started working for CCCU (PSR ¶ 104), and he then arranged loans at CCCU to generate funds to satisfy the balances on the earlier FRSB loans and to conceal his fraud. On July 31, 2009, defendant arranged for a loan of $135,000 in N.N.'s name at CCCU (again without N.N.'s knowledge or consent). As collateral, he pledged the home of N.N.'s elderly parents, using forged documents. Defendant used these funds to satisfy the balance on the earlier $145,000 N.N. loan. The new loan went unpaid, and CCCU foreclosed on N.N.'s parents' home, forcing them to cash in their life savings to repurchase their home at a sheriffs' sale. (PSR ¶ 36.) On

2

September 5, 2009, defendant arranged a loan in the amount of $230,000 for C.P., and on October 2, 2009 a loan in the amount of $250,000 for P.D., Sr.,[1] both at CCCU, using the proceeds to pay off their loan balances at FRSB. (PSR ¶¶ 37-38.) While defendant did not use proceeds from the September and October 2009 loans for his own purposes, he arranged these transactions to cover his earlier wrongdoing at FRSB (PSR ¶ 38), and both loans were included as part of the scheme set forth in the information to which defendant pleaded guilty. Both of these loans went into default, and CCCU lost substantial amounts.

The PSR recommended that defendant make restitution in the total amount of $679,737.23:

• $468,710.23 to CUNA Mutual Group, the insurer that paid CCCU's dishonest employee claim related to the losses on the 2009 C.P. (ultimately $218,715.23) and P.D. loans (ultimately $249,995.00);

• $25,000.000 to CCCU, the amount of its deductible on the dishonest employee claim;

• $168,500.00 to N.N.'s parents, representing the cost of repurchasing their home; and

• $17,527.00 to N.N., representing the amount of the judgment CCCU obtained against N.N. for the shortfall on the fraudulent CCCU loan after his parents repurchased their home.

(See PSR ¶ 127; Govt.'s Rest. Mem. [R. 16] at 3.) The government requests that I set restitution in that amount. As indicated, defendant has not responded on the restitution issue. Prior to sentencing, however, defendant objected to the inclusion of the 2009 C.P. and P.D. loans as relevant conduct under the sentencing guidelines, arguing that these loans were not themselves fraudulent.

---

[1] In order to pay off P.D.'s June 25, 2008 FRSB loan, defendant originated a $250,000 loan at CCCU in the name of P.D.'s parents, identified in the information as P.D., Sr.

3

Under the Mandatory Victim Restitution Act ("MVRA"), the court must order restitution to all victims of offenses committed against property, including offenses committed by fraud or deceit. 18 U.S.C. § 3663A(a)(1) & (c)(1)(A)(ii). The term "victim" means a person directly and proximately harmed as a result of the commission of the offense. 18 U.S.C. § 3663A(a)(2). Where the offense of conviction "involves as an element a scheme, conspiracy, or pattern of criminal activity," the MVRA requires restitution to "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). If the victim received compensation from an insurer, the court must order repayment to the insurer. 18 U.S.C. § 3664(j)(1).

In the present case, the information to which defendant pleaded guilty specifically identified the September 5, 2009 CCCU loan to C.P. for $230,000 and the October 2, 2009 CCCU loan to P.D., Sr. for $250,000 as loans originated as part of defendant's bank fraud scheme. (R. 1 at 2.) Defendant originated these loans in an effort to cover up his earlier wrongful conduct at FRSB. CCCU was harmed when these loans went unpaid, and its losses would not have occurred but for defendant's criminal conduct in executing this fraud scheme. See United States v. Rand, 403 F.3d 489, 494 (7th Cir. 2005) (stating that restitution is authorized under the MVRA to a victim who is directly harmed by the offender's conduct in the course of executing a fraud scheme); see also United States v. Donaby, 349 F.3d 1046, 1055 (7th Cir. 2003) (allowing restitution for property damage caused during high speed chase following a bank robbery).

Finally, as the government explains in its memorandum, the record supports a finding that the 2009 P.D., Sr. and C.P. loans were, in fact, fraudulent. Not only were these loans designed to conceal defendant's previous fraudulent conduct at FRSB, they also served to

4

conceal from P.D. and C.P. the amounts defendant had improperly diverted from their previous lines of credit. Further, defendant knew or should have known that the borrowers had little or no ability to pay. In the case of the P.D., Sr., loan, the government indicates that defendant never met with the named borrowers – who actually expected their impecunious son (P.D.) to make the payments, and defendant relied on an inflated appraisal of the collateral – an unprofitable laundromat. With respect to the C.P. loan, defendant knew that the collateral used to secure the earlier C.P. loan at FRSB was insufficient, yet he used that same collateral to support a new, larger loan at CCCU.

**THEREFORE, IT IS ORDERED** that restitution is set at $679,737.23, to the victims and insurer identified in ¶ 127 of the PSR. Pursuant to 18 U.S.C. § 3664(j)(1), restitution shall be paid to the victims before the insurer. Defendant shall on release from prison make payments at a rate of not less than $200/month. An amended judgment shall issue setting forth these terms.

Dated at Milwaukee, Wisconsin, this 8th day of October, 2013.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge